**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES M. SMALL,**

                      **Plaintiff,**            **3:11-cv-933**
                                                     **(GLS)**
            **v.**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                      **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group | HOWARD D. OLINSKY, ESQ. |
| 300 S. State Street | BRANDON W. SAWYER, ESQ. |
| 5th Floor, Suite 520 | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SIXTINA FERNANDEZ |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.  Introduction

Plaintiff James M. Small challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB) and supplemental security income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1 at 1.)  After reviewing the administrative record and carefully considering Small's arguments, the Commissioner's decision is affirmed and Small's Complaint is dismissed.

## II.  Background

On September 14, 2009, Small filed applications for DIB and SSI under the Social Security Act ("Act"), alleging disability beginning April 1, 2007.[1]  (*See* Tr.[2] at 12, 101-08.)  After his applications were denied, Small requested a hearing before an Administrative Law Judge (ALJ), which was held on November 30, 2010.  (*See id.* at 29-53, 64.)  On January 28, 2011, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration

---

[1] Small concedes that in order to be entitled to DIB, he must prove disability on or before his date last insured of June 30, 2009.  (*See* Dkt. No. 15 at 2.)

[2] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 11.)

Appeals Council's denial of review.  (*See id.* at 1-3, 9-26.)

Small commenced the present action by filing a Complaint on August 5, 2011, seeking review of the Commissioner's determination.  (*See* Compl.)  The Commissioner filed an answer and certified copy of the administrative transcript.  (*See* Dkt. Nos. 10, 11.)  Both parties, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 15, 18.)

## III.  Contentions

Small contends that the Commissioner's decision was the product of legal error and is unsupported by substantial evidence.  (*See generally* Dkt. No. 15.)  Specifically, Small claims that the ALJ: (1) erred at step two in failing to find his "adjustment disorder with mixed anxiety and depressed mood and panic disorder severe"; (2) "failed to account for any functional limitations arising from [his] mental impairment when determining RFC"; (3) "erred in failing to give controlling weight to the opinions of treating physician Dr. [Mark] Corey"; (4) erroneously discounted his credibility; and (5) improperly relied on the Medical-Vocational Guidelines at step five.  (*Id.* at 10-23.)  The Commissioner counters that the ALJ employed the proper legal standards and that her decision is supported by substantial evidence.  (*See generally* Dkt. No. 18.)

## IV.  **Facts**

The evidence in this case is undisputed and the court adopts the

parties' factual recitations.  (*See* Dkt. No. 15 at 2-9; Dkt. No. 18 at 2.)

## V.  **Standard of Review**

The standard for reviewing the Commissioner's final decision under

42 U.S.C. §§ 405(g) and 1383(c)(3) is well established and will not be

repeated here.  For a full discussion of the standard and the five-step

process used by the Commissioner in evaluating whether a claimant is

disabled under the Act, the court refers the parties to its previous opinion in

*Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL

759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  **Discussion**

## A.  **Severity Determination**

Small contends first that the ALJ erred at step two by failing to find

severe his "adjustment disorder with mixed anxiety and depressed mood

and panic disorder."  (Dkt. No. 15 at 10-14.)  The Commissioner counters

that the ALJ's severity determination is supported by substantial evidence.

(*See* Dkt. No. 18 at 6-9.)  The court agrees with the Commissioner.

At step two of the sequential analysis, the ALJ must determine

4

whether the claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  For an impairment or combination of impairments to be deemed "severe," it must "significantly limit[]" the claimant's "physical or mental ability to do basic work activities."[3]  *Id.* §§ 404.1520(c), 416.920(c).  Additionally, in assessing the severity of an adult claimant's mental impairments, the ALJ must utilize a "special technique."  *Id.* §§ 404.1520a, 416.920a.  This technique requires the ALJ to rate the claimant's functional limitations in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4).  Unless the claimant has "more than a minimal limitation in [his] ability to do basic work activities," a finding of non-severity as to mental impairments will generally be made where the ALJ rates the degree of limitation as "'none'" or "'mild'" in the first three functional areas and "'none'" in the fourth area.  *Id.* §§ 404.1520a(d)(1),

---

[3] The term "basic work activities" refers to "the abilities and aptitudes necessary to do most jobs," including: "[u]nderstanding, carrying out, and remembering simple instructions; . . . [u]se of judgment; . . . [r]esponding appropriately to supervision, co-workers and usual work situations; and . . . [d]ealing with changes in a routine work setting."  20 C.F.R. §§ 404.1521(b), 416.921(b).

416.920a(d)(1).

Here, upon a finding that Small's adjustment disorder, panic disorder, and marijuana abuse constituted medically determinable mental impairments,[4] the ALJ assessed the resulting limitations on Small's ability to perform basic work activities and applied the "special technique."  (Tr. at 15-16.)  The ALJ concluded that Small had mild restrictions in each of the first three broad functional categories, and that no evidence existed of episodes of decompensation.  (*See id.*)  Furthermore, Small's mental impairments were found to cause no "more than minimal limitation in [his] ability to perform basic mental work activities," and were therefore deemed "not-severe."  (*Id.* at 15.)

In finding Small's mental impairments "not-severe," the ALJ relied, in part, on the opinions of examining and non-examining consultative psychologists Mary Ann Moore and T. Harding, respectively.  (*Id.* at 15-16.) The ALJ highlighted Dr. Moore's opinion that Small "is able to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, and learn simplistic tasks," and Dr.

---

[4] The ALJ also noted that Small's "alleged depression and anxiety appear to be secondary to [his] physical impairments and limitations."  (Tr. at 16.)

Harding's conclusion that he "can sustain a normal workday/week and can maintain a consistent pace to do at least unskilled work." (*Id*. at 15, 227, 245.)  In crediting these opinions "some weight," the ALJ acknowledged that both psychologists indicated the presence of some functional limitations resulting from Small's mental impairments, (*see id.* at 16, 224-28, 243-45), but concluded that the overall record evidence did not support a finding beyond "mild" limitation, (*id.* at 15-16).  Specifically, the ALJ discussed Small's ability to: cook and shop; dress, bathe and groom himself; visit with friends; interact appropriately with medical personnel; "count and do serial threes when encouraged to slow down"; and read the "Penny Saver magazine and do word search games."  (*Id*. at 15, 44-46.) Additionally, the ALJ noted that Small did not allege mental limitations in his disability application materials and testified at the hearing that he had not received any recent treatment for mental health, depression or anxiety issues.  (*See id.* at 16, 43, 121.)

Accordingly, the ALJ engaged in the proper legal analysis at step two, and, while Small suffers some limitations as a result of his mental impairments, her finding that those impairments are "not-severe" is

supported by substantial evidence.[5]

## B.   Residual Functional Capacity (RFC)

### 1.    Mental RFC

Small argues summarily that "the ALJ failed to account for any functional limitations arising from [his] mental impairment when determining RFC." (Dkt. No. 15 at 14.)  A claimant's RFC "is the most [he] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In determining the claimant's mental RFC, the ALJ cannot simply rely on the limitations articulated in the severity analysis at steps two and three, but must instead provide "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996).

Put simply, Small's contention is entirely without merit.  In a thorough RFC analysis, the ALJ articulated the appropriate standard by which she

---

[5] Small also argues that the ALJ erroneously failed to "determine the onset date of [his] mental impairments."  (Dkt. No. 15 at 13.) Determination of onset date, however, presupposes a finding of disability. *See* SSR 83-20, 1983 WL 31249, at *1 (1983).  As such, the ALJ had no occasion to reach the issue.  *See Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) ("[T]he ALJ's determination that plaintiff was not disabled obviated the duty under SSR 83-20 to determine an onset date.")

was obligated to assess the functional limitations resulting from Small's

mental impairments, and properly applied that standard.  (*See* Tr. at 16-

21.)

### 2.    Treating Source

Next, Small argues that the ALJ failed to apply the correct legal

standard in granting less than controlling weight to the opinions of treating

physician Dr. Corey, and that her decision to do so is unsupported by

substantial evidence.  (*See* Dkt. No. 15 at 14-18.)  Controlling weight will

be given to a treating source's opinion on the nature and severity of a

claimant's impairments where it is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence."  20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

When a treating source's opinion is given less than controlling weight, the

ALJ is required to consider the following factors: the length, nature and

extent of the treatment relationship; the frequency of examination;

evidentiary support offered; consistency with the record as a whole; and

specialization of the examiner.  20 C.F.R. §§ 404.1527(c)(2)-(6),

416.927(c)(2)-(6).

The ALJ accorded "very little weight" to the opinions of Small's primary care physician, Dr. Corey.  (Tr. at 20, 329-31.)  The ALJ based this reduced weight primarily on the fact that, as Small admitted, Dr. Corey does not treat him for his back condition.[6]  (*See id.* at 20, 42.)  Such assessment of the "[n]ature and extent of the treatment relationship" is an explicitly permissible consideration in the weighing process.  20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) ("For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain.").  Furthermore, as it is evident that she properly applied sections 404.1527(c) and 416.927(c), the ALJ did not err in failing to methodically discuss each individual factor.  *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

---

[6] The ALJ also noted that "Dr. Corey's assessments do not cover the time period before claimant's date last insured of June 30, 2009." (Tr. at 20.)  Small argues correctly that the ALJ's reasoning on this point is inapplicable to his SSI claim.  (*See* Dkt. No. 15 at 16 n.4.)  This argument is immaterial, however, as the ALJ's treating source assessment is proper even absent consideration of the temporal limitations of Dr. Corey's opinions.

In addition to being legally sound, the ALJ's treating source analysis is supported by substantial evidence.  The limited nature of Dr. Corey's treatment role in relation to Small's back issues is evidenced by his referral of Small to neurosurgeon Muhammad Jalaluddin, Dr. Ralph Ortiz for pain management, and physical therapist Jose Traverso for a functional capacity evaluation.  (*See* Tr. at 18-19, 210, 276-304.)  The findings of Dr. Jalaluddin and PT Traverso, as well as Small's own testimony regarding his daily activities, formed the basis of the ALJ's RFC determination.  (*See id.* at 18-20.)  While Small argues that Dr. Corey's opinion is consistent with other medical source conclusions of record, the restrictive opinions with which Small contends Dr. Corey's findings are in accord were permissibly discounted by the ALJ pursuant to 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  (*See id.* at 20.)

Accordingly, the ALJ applied the proper legal standard in according "very little weight" to the opinions of Dr. Corey, and her decision to do so is supported by substantial evidence.

## C.   Credibility

Next, Small contends that the ALJ's assessment of his credibility was legally flawed and is factually unsupported.  (*See* Dkt. No. 15 at 18-21.)

11

The Commissioner counters, and the court agrees, that the ALJ's credibility

finding was legally sound and is supported by substantial evidence.  (*See*

Dkt. No. 18 at 12-14.)

Once the ALJ determines that the claimant suffers from a "medically

determinable impairment[] that could reasonably be expected to produce

the [symptoms] alleged," she "must evaluate the intensity and persistence

of those symptoms considering all of the available evidence; and, to the

extent that the claimant's [subjective] contentions are not substantiated by

the objective medical evidence, the ALJ must engage in a credibility

inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

quotation marks and citations omitted).  In performing this analysis, the ALJ

"must consider the entire case record and give specific reasons for the

weight given to the [claimant's] statements."  SSR 96-7p, 1996 WL 374186,

at *4 (July 2, 1996).  Specifically, in addition to the objective medical

evidence, the ALJ must consider the following factors: "1) daily activities; 2)

location, duration, frequency, and intensity of any symptoms; 3)

precipitating and aggravating factors; 4) type, dosage, effectiveness, and

side effects of any medications taken; 5) other treatment received; and 6)

other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-

12

444, 2012 WL 514944, at \*19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §

404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi)).

The ALJ found that Small's subjective complaints were credible only

to the extent that they were consistent with his RFC.  (*See* Tr. at 18-19.)

Small argues generally that the ALJ impermissibly determined his RFC

first, and used that as the measuring stick against which to weigh the

consistency of his subjective complaints.  (*See* Dkt. No. 15 at 20-21.)  It is

clear, however, that the ALJ undertook a detailed credibility analysis, and

that her reference to consistency with the RFC to which Small objects was

merely an indication that the RFC incorporated those findings.  (*See* Tr. at

17-19.)  Contrary to Small's contentions, the ALJ engaged in a detailed

review of the entire case record, including consideration of objective

medical evidence and the factors set forth in 20 C.F.R. §§ 404.1529(c) and

416.929(c).  (*See id.*)

Small also makes specific objections to certain factors considered, or

omitted, in the ALJ's credibility analysis.  (*See* Dkt. No. 15 at 19-20.)

These contentions are also without merit.  First, Small takes issue with the

ALJ's consideration of an inconsistency between statements made by him

to Drs. Jalaluddin and Ortiz.  (*See id.* at 19.)  Although Small characterizes

13

Case 3:11-cv-00933-GLS   Document 19   Filed 11/28/12   Page 14 of 16

inconsistent reports made by him as constituting "a single isolated" anomaly, (*id.*), the ALJ was undoubtedly permitted to consider such an inconsistency, *see* SSR 96-7p, 61 Fed. Reg. at 34,486.   Next, Small's contention that the ALJ failed to consider the limitations on his ability to perform activities of daily living is flatly incorrect.  (*See* Dkt. No. 15 at 19-20; Tr. at 18.)  Finally, while Small argues that the ALJ failed to explicitly articulate each factor listed in 20 C.F.R. §§ 404.1529(c) and 416.929(c), it is clear that the ALJ properly considered those factors and fulfilled her duty to articulate with sufficient specificity the weight accorded to Small's subjective complaints, as well as her reasons for assigning that weight. (*See* Dkt. No. 15 at 19-20; Tr. at 18-19.)

In sum, the ALJ's thorough credibility analysis was legally proper and is supported by substantial evidence.  It will, therefore, not be disturbed.

## D.   Step Five Determination

Finally, Small argues that the ALJ's flawed severity, RFC and credibility findings factually undermine her step five determination, and that, as a result, the ALJ committed legal error by relying solely on the Medical-Vocational Guidelines and failing to elicit testimony from a vocational expert.  (*See* Dkt. No. 15 at 21-23.)  As discussed above, however, the

ALJ's determinations in each of the areas disputed are supported by substantial evidence.  Accordingly, the ALJ's determination at step five that Small had "no significant limitations in the performance of . . . basic mental demands of work," and therefore that testimony from a vocation expert was unnecessary,[7] was legally sound and is supported by substantial evidence. (Tr. at 21.)

## E.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Small's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

---

[7] Reliance on the Medical-Vocation Guidelines is improper "when a claimant's nonexertional impairments significantly diminish his ability to work-over and above any capacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the" guidelines. *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).  Instead, where nonexertional impairments significantly diminish a claimant's ability to work, "the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Id*.

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 28, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court